LYNCH, Chief Judge,
concurring.
Sometimes the whole can be greater than the sum of the parts, including in Batson cases. I write separately to emphasize that the defendant’s underlying theory is sound, though of little help to him here. Even if the prosecution offers facially neutral reasons for striking individual members of protected groups at the time of the strike, if those strikes together later create a concern that certain groups are underrepresented, it may well make sense for a trial judge to take a second look at the exclusions.
Batson and its progeny are not ultimately about statistical disparities or disparate impact; they are about animus. See Snyder v. Louisiana, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). Determining when a party acted with discriminatory purpose when exercising its peremptory challenges is never easy and is not well suited for bright-line rules. See Miller-El v. Dretke, 545 U.S. 231, 238-40, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). The Supreme Court’s recent jurisprudence reminds courts to consider “all of the circumstances that bear upon the issue of racial animosity.” Snyder, 552 U.S. at 478, 128 S.Ct. 1203; see also Miller-El, 545 U.S. at 240, 125 S.Ct. 2317 (“If any facially neutral reason sufficed to answer a Batson challenge, then Batson would not amount to much more than Swain. Some stated reasons are false, and although some false reasons are shown up within the four corners of a given case, sometimes a court may not be sure unless it looks beyond the case at hand.”).
But objections based solely on numerical effects are inherently problematic. Although courts may consider statistics as evidence of discrimination, Miller-El, 545 U.S. at 240-41, 125 S.Ct. 2317, the Supreme Court has not accepted the proposition that a showing of disparate impact alone meets the Batson requirement, see Hernandez v. New York, 500 U.S. 352, 362, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion) (“An argument relating to the impact of a classification does not alone show its purpose.”).
Relying only on statistics to uncover discriminatory intent can be over- or underinclusive. Prosecutors often exercise peremptories against a series of minority jurors for valid, nondiscriminatory reasons. And no matter how many or how few minority jurors the government strikes, “[t]he Constitution forbids striking *56 even a single prospective juror for a discriminatory purpose.” Snyder, 552 U.S. at 478, 128 S.Ct. 1203 (quoting United States v. Vasquez-Lopez, 22 F.3d 900, 902 (9th Cir.1994)).
Frequently in life, later, related events have explanatory power as to what happened earlier. Thus an explanation for a strike that seems minimally adequate at the time may look more suspect in light of later challenges. The cumulative impact of a series of peremptories is one of many facts courts can consider when interpreting a prosecutor’s motives.
Here, the defendant has no more than numbers, as Judge Torruella’s opinion clearly explains. The other facts do not show that the government acted with animus. The government exercised two peremptories to which Charlton objects, first against an attorney and then, initially, against a clergymember. In the end, the prosecution decided, after it looked at the assembled jurors, not to strike Juror No. 37 (the clergymember), which removed any suspicion of a Batson violation from the case. While the defendant’s case has been ably argued, there was no error.